IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HARRY DIETER MUELLER, M.D.,       )<br>                                                          )<br>           Plaintiff,                         )<br>      vs.                                         )<br>                                                          )<br>COLUMBUS COMMUNITY HOSPITAL,  )<br>INC.,                                             )<br>                                                          )<br>           Defendant.                       ) | 8:06CV1<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on a motion to dismiss filed by defendant Columbus Community Hospital, Inc., Filing No. 8. The court, having considered the motion, the plaintiff's response, and the relevant materials and law, now determines that defendant's motion to dismiss should be denied, in part, and granted, in part.

**Background**

Plaintiff Harry Dieter Mueller, M.D. ("Dr. Mueller") is a physician, specializing in obstetrics and gynecology, who holds a valid license to practice medicine in the State of Nebraska. *See* Complaint at ¶¶ 2, 5, and 6. The defendant hospital is a non-profit corporation, organized under the laws of the State of Nebraska. *Id.*

Dr. Mueller alleges that on April 30, 2004, defendant advised him, in writing, of a request by its Medical Executive Committee ("MEC") to investigate Dr. Mueller's standards of practice. *Id.* at ¶¶ 7-10. Dr. Mueller alleges that, thereafter, the MEC appointed an Ad Hoc Committee, consisting of doctors Luke P. Lemke, Richard C. Cimpl, and Dale A. Zaruba. *Id.* According to the complaint, the Ad Hoc Committee, as part of their investigation, would meet informally with Dr. Mueller.

Dr. Mueller alleges that on May 5, 2004, he received a letter from the defendant informing him that the Ad Hoc Committee had scheduled an informal meeting for May 11, 2004. *Id.* at ¶ 11. Dr. Mueller, however, alleges that this notice failed to: (1) inform him of the charges or evidence against him; and (2) give him an opportunity to review, address, request, or rebut any evidence. *Id.*

According to Dr. Mueller, on May 18, 2004, the hospital wrote him indicating that the MEC had scheduled a meeting between the hospital and Dr. Mueller for May 27, 2004. *Id.* at ¶ 12-14. Dr. Mueller alleges that the letter informed him that the MEC would propose a requirement that Dr. Mueller participate in the Colorado Personalized Education for Physicians Program coupled with a summary suspension of his obstetrics privileges. *Id.* According to Dr. Mueller, the MEC's recommendations were submitted to the hospital's governing Board, which then suspended his obstetrics practice. *Id.* Dr. Mueller alleges, however, that the hospital did not follow proper hearing procedures and did not give him adequate notice of the hearing which resulted in his suspension. *Id.* For example, Dr. Mueller alleges that an evidentiary hearing was scheduled before the hospital's Board, but Dr. Mueller was not informed of the witnesses or evidence against him prior to the hearing. *Id.*

Dr. Mueller alleges that a hearing was held before a three-member panel of physicians chosen by the hospital, but not before the MEC or the Board. According to Dr. Mueller, this panel issued a Decision and Recommendation on October 13, 2004, recommending that Dr. Mueller's privileges be restored, but subject to the following conditions:

2

(1) No forceps deliveries permitted above the outlet level;

(2) No C-Sections permitted before thirty-nine (39) weeks, unless prior approval obtained;

(3) Imposition of meeting attendance requirements: and

(4) Restrictions on reading were imposed for non-stress test results for two years.

*Id.* at ¶ 15.

Dr. Mueller alleges that this Decision and Recommendation was subject to administrative review. *Id.* at ¶ 16. He, however, alleges that the review was procedurally deficient and was not performed by knowledgeable peers. *Id.*

Dr. Mueller alleges that the MEC met on December 2, 2004, without notifying him and giving him an opportunity to be heard or present and rebut additional evidence. *Id.* at ¶ 17. According to Dr. Mueller, the hospital placed additional conditions upon him (in addition to those previously recommended to be placed upon him on October 13, 2004), including that:

(a) Dr. Mueller may not perform any instrument assisted deliveries of any kind;

(b) a full-time Proctor, paid for by Dr. Mueller himself, follow or accompany Dr. Mueller during his work hours at the hospital;

(c) the MEC must approve any suggested Proctor; and

(d) Dr. Mueller may not supervise or teach midwives or students during the proctorship period. *Id.*

Dr. Mueller alleges that he challenged these restrictions after he learned of them and requested a review before the hospital's Board. *Id.* at ¶ 18. However, he contends that the review of those restrictions was deficient. Specifically, Dr. Mueller alleges that the

review process extended beyond the evidentiary scope of the previous hearing on October 13, 2004. *Id.*

Dr. Mueller has filed a complaint against defendant hospital claiming that the suspension of his privileges to practice medicine constitutes violations of his property rights and deprivation of his liberty interests without procedural and substantive due process of law. *Id.* at ¶ 21. Dr. Mueller also claims that, during the process of placing these restrictions, the hospital also violated its duty of confidentiality by disseminating confidential information. *Id.* at ¶¶ 35-36. Dr. Mueller alleges that as a result of the defendant hospital's actions, he suffered damages. *Id.* at ¶ 38. Specifically, Dr. Mueller alleges that his claims against the hospital arise "under the Health Care Quality Improvement Act, 42 U.S.C. §§ 411101 *et seq.*, and under federal Civil Rights law, including 42 U.S.C. §§ 1981, 1983, and 2000(e)." *Id.* at ¶ 1.

The defendant hospital has filed a motion to dismiss Dr. Mueller's claims, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), on the grounds that this court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. See Filing No. 8. Dr. Mueller opposes the hospital's motion arguing that the court has jurisdiction and that he has properly asserted claims upon which relief can be granted. See Filing No. 12. For the reasons stated below, the court determines that defendant's motion to dismiss should be denied, in part, and granted, in part.

### 12(b)(1) and (b)(6) standards

For the court to dismiss a complaint for lack of subject matter jurisdiction under 12(b)(1), the complaint must be successfully challenged on its face or on factual

truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). In a facial challenge, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.* In a factual challenge to jurisdiction, the court considers competent evidence such as affidavits, depositions, and the like in order to determine the factual disputes. *Id.*

For the court to dismiss a complaint under Rule 12(b)(6), the court considers all of the facts alleged in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir. 1999). A complaint is successfully challenged if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* Relief is granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.*

When a defendant challenges a complaint on its face under both Rule 12(b)(1) and Rule 12(b)(6), the defendant must show that the plaintiff can prove no set of facts in support of their claims which would entitle them to relief. *See Osborn v. United States,* 918 F.2d 724, 729 n.6 (8th Cir. 1990) (in a facial attack under 12(b)(1) the non-moving party receives the same protections as it would defending against a motion brought under 12(b)(6) (citation omitted)).

## Discussion

As previously stated, Dr. Mueller alleges that his claims against the hospital arise "under the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101 *et seq.*, and under

federal Civil Rights law, including 42 U.S.C. §§ 1981, 1983, and 2000(e)." *Id.* at ¶ 1. The defendant challenges the plaintiff's complaint under each of these laws.

*Jurisdiction and claims under the Health Care Quality Improvement Act*

With respect to the Health Care Quality Improvement Act ("HCQIA"), the defendant contends that Dr. Mueller cannot sustain a cause of action because the Act does not afford a private cause of action. In his response, Dr. Mueller indicates that he "asserts a civil rights case, not an HCQIA claim." See Filing No. 12, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at ¶ 15. Furthermore, as defendant points out, the Eighth Circuit has ruled that there are "no bases in the express language of the HCQIA for concluding that it affords . . . a private cause of action." See *Wayne v. Genesis Medical Center,* 140 F.3d 1145, 1147 (8th Cir. 1998). Consequently, the court will grant the defendant's motion with respect to any claim by plaintiff under the HCQIA.

*Jurisdiction and claims under 42 U.S.C. § 1981 and 2000e*

With respect to the federal civil rights claims alleged in the complaint, the defendant contends that Dr. Mueller's claims under 42 U.S.C. §1981 and 2000(e) should be dismissed because the complaint does not contain allegations which give rise to a claim under this statute. The court agrees.

Title 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1981

6

redresses racial discrimination, including discrimination based on "ancestry or ethnic characteristics." *St. Francis College v. Al-Kahzraji,* 481 U.S. 604, 613 (1987).

Title 42 U.S.C. § 2000e or Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e *et seq*. However, prior to seeking a judicial remedy, a Title VII plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 180 days after the alleged unlawful practice. *Jennings v. American Postal Workers Union,* 672 F.2d 712, 714 (8th Cir. 1982).

Here, Dr. Mueller's complaint does not have any allegations which indicate that he was discriminated against by the hospital in any way, i.e., that he was treated different from other employees similarly situated because of his race, color, religion, sex, or national origin. Nor does it contain any allegations which indicate that he has filed a discrimination charge with the EEOC. Consequently, the court will grant the defendant's motion with respect to any claim by plaintiff under 42 U.S.C. §1981 and 2000e *et seq*.

*Jurisdiction and Claims under 42 U.S.C. § 1983*

The defendant also contends that Dr. Mueller's claims under 42 U.S.C. § 1983 should be dismissed because none of the alleged action taken by the hospital was under the color of state law.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins.*

7

*Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Id.* at 50 (internal citations omitted.) Accordingly, the "ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

In *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288 (2001), the United States Supreme Court instructed that the acts of a private party are "fairly attributable to the State" so as to be deemed under "color of state law" for § 1983 purposes "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy,* 531 U.S. at 295. The Supreme Court noted that the criteria for determining whether state action is present "lack rigid simplicity," but the Court identified the following factors that bear on the question:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," [*Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982)], when the State provides "significant encouragement, either over or covert," [], or when a private actor operates as a "willful participant in joint activity with the State or its agents," [*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941 (1982)]. We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231 (1957), when it has been delegated a public function by the State, [*West v. Atkins,* 487 U.S. 42, 56 (1988)][] when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," *Evans v. Newton,* 382 U.S. 296, 299, 301 (1966).

*Brentwood Academy,* 531 U.S. at 296.

In this case, viewing the allegations in the light most favorable to Dr. Mueller, the hospital allegedly restricted Dr. Mueller's privileges to practice medicine. However, those restrictions of privileges cannot be attributed to the state. Nothing in the plaintiff's complaint indicates that the state was involved in any way in the decision to restrict Dr. Mueller's privileges at the hospital. Without a direct nexus between the state and the hospital's decision to restrict Dr. Mueller's privileges, Dr. Mueller cannot subject the defendant to the limitations of § 1983. *Brentwood Academy,* 531 U.S. at 295. Here, Dr. Mueller's complaint simply fails to properly allege that the defendant acted under color of state law. Consequently, defendant's motion to dismiss with respect to this claim should be granted. However, the court notes that Dr. Mueller requested leave to amend this claim if the court were to determine that he failed to properly plead the necessary elements. Because the court determines that Dr. Mueller's complaint lacks allegations to support the elements necessary for a claim under § 1983, the court will allow Dr. Mueller an opportunity to file an amended complaint to adequately plead the elements of his § 1983 claim.

### *Jurisdiction and Duty of Confidentiality Claim*

The defendant also contends that plaintiff's complaint should be dismissed with respect to Dr. Mueller's claim that the defendant violated its duty of confidentiality by disseminating confidential information. The court agrees. Here, Dr. Mueller does not indicate what law the defendant allegedly violated, nor does he provide any authority to support this claim. Dr. Mueller's bare allegations with respect to this claim are not enough to survive a motion to dismiss. A complaint must contain sufficient facts, as opposed to

mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal. *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627 (8th Cir. 1999). Consequently, the defendant's motion with respect to this claim should be granted.

IT IS, THEREFORE, ORDERED:

1. That the plaintiff is granted 30 days from the date of this order to file an amended complaint with respect to his claim under 42 U.S.C. § 1983;

2. That defendant's motion to dismiss, Filing No. 8, is denied with respect to plaintiff's claim under 42 U.S.C. § 1983, without prejudice to reassertion within appropriate time after the filing of the plaintiff's amended claim; and

3. That defendant's motion to dismiss is granted in all other respects.

DATED this 30th day of May, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge